USDC APPEAL: 5:20-cv-01048-PA

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### IN RE: CLIFFORD ALLEN BRACE, JR. DEBTOR

**CLIFFORD ALLEN BRACE, JR.,**
    **Appellant,**
**VS.**

**STEVEN M. SPEIER, CHAPTER 7 TRUSTEE,**
    **Appellee.**



FILED
CLERK, U.S. DISTRICT COURT

AUG 2 0 2020

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

On Appeal from the United States Bankruptcy Court for the Central District of
California, Riverside Division
No. 6:11-bk-26154-SY
Hon. Scott H. Yun
USDC No.: 5:20-cv-01048-PA

### APPELLANT'S OPENING BRIEF

Clifford Allen Brace, Jr.
*22421 Barton Rd. #190*
*Grand Terrace, CA 92313*
*(909) 793-7276*
*Attorney for Debtor In Pro Per*

# TABLE OF CONTENTS

**Page No**.

TABLE OF CONTENTS……………………………………………………… ii

TABLE OF AUTHORITIES………………………………………….…..iv

STATEMENT OF APPELLATE JURISDICTION ……………..…………………1

STANDARD OF REVIEW……………………………………..…………………1

STATEMENT OF ISSUES …………………………………………………...4

   1. STATEMENT OF CASE……………………………………………8

   2. STATEMENT OF FACTS………………………………………..……8

      a. FACTS…………………………………..……………...……..8

   3. SUMMARY OF THE ARGUMENT……………………………………17

      a. THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY5 CONTEMPT ORDER BECAUSE THERE WAS NO AUTOMATIC STAY IN FORCE AT THE TIME OF THE PURPORTED FORCLOSURE………………………………………………….. 21

      b. THE BANKRUPTCY COURT ERRED IN USING A PERMISSIVE ORDER "OMNIBUS MOTION" and "MOTION FOR TURNOVER OF REAL PROPERTY" AS GROUNDS FOR CONTEMPT………………………………………………….. 22

      c. THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE THE TRUSTEE MADE UNSUPPORTED ALLEGATIONS IN THE MOTION FOR CONTEMPT CONCERNING THE DEBTOR AND IGNORED, COMPLETELY, THE FACT THAT TITLE-REALTY AND THE PROBATE ESTATE ARE SEPARATE LEGAL ENTIIES FROM MR. BRACE……………………………………………...24

      d. THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE THE UNDERLYING TURNOVER ORDER REMAINS THE SUBJECT OF THE

TURNOVER APPEAL AND THE TRUSTEE'S ATTEMPTS TO ENFORCE THAT ORDER IS AN IMPERMISSBLE COLLATERAL ATTACK ON MR. BRACE'S TURNOVER APPEAL...................................................................27

e.  THEBANKRUPTCY ERRRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE DEBTOR'S OBJECTIVELY REASONABLE BASIS TO BELIEVE THAT HIS PERSONAL ACTIONS IN CARRYING OUT HIS FIDUCIARY DUTIES AS EXECUTOR OF THE GEJ ESTATE AND AS AN OFFICER OF TITLE-REALTY DID NOT VIOLATE THE AUTOMATIC STAY AND WOULD OTHERWISE EXEMPT HIM FOR ANY IN PERSONAM LIABILITY AND RAISE A FAIR GROUND OF DEBOUT AND THEREFORE THE BANKRUPTCY COURT SHOULD NEVER HAVE FOUND DEBTOR IN CONTEMPT,,..............................................................28

f.  THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5 CONTEMPT ORDER BECAUSE IT WAS OBJECTIVELY REASONABLE FOR THE DEBTOR TO BELIEVE THAT THE BANKRUPTCY COURT LACKED JURISDICTION TO DETERMINE A VIOLATION OF STAY REGARDING THE CHIPPEAWA PROPERTY BECAUSE THE PLAINTIFF'S DISMISSAL OF THE STATE COURT CASE RESERVED JURISDICTION TO ENFORCE THE RELATED SETTTLEMENT AGREEMENT UNDER CCP 664.6 WITH THE STATE COURT .............................................................................30

g.  THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5, CONTEMPT ORDER BECAUSE THE MAY 5 2020 CONTEMPT ORDER DOES NOT CLEARLY SPECIFY THE MEANS OF PURGING THE CONTEMPT...........................31

h.  THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5 CONTEMPT ORDER BECAUSE THE DEBTOR WOULD BE UNABLE TO PURGE ANY CONTEMPT ISSUED AS A RESULT OF THE LANGUAGE IN THAT ORDER.................31

i.  THE REVERSAL OF THE MAY 5 CONTEMPT ORDER WILL NOT INJURE OTHER PARTIES.....................................32

j.  THE PUBLIC INTEREST WARRANTS A REVERSAL OF THE MAY 5 CONTEMPT ORDER.......................................32

    4.  CONCLUSION……………………………………………………….…33

STATEMENT OF RELATED CASES……………...........................................…34

CERTIFICATE OF COMPLIANCE…………………………………………....…36

PROOF OF SERVICE………………………………….…………………….37

## **TABLE OF AUTHORITIES**

**Cases**                                                          **Page No.**

Heininger v. City of Phoenix
     625 F.2d 842, 843 (9th Cir. 1980)...............................................1

M/V American Queen v. San Diego Marine Const.
     708 F.2d 1483, 1487 (9th Cir. 1983) ..............................................1

In re New England Fish Co.
     749 F. 2nd 1277, 1280 (9th Cir. Wash. 1984) ......................................1

Marshall V. Marshall
     547 U.S. 293 (2006) ......................................................................27

Barton V. Barbour
     104 U.S. 126 (1881) ......................................................................15

Hilltop Developers V. Holiday Pine Service Corp.
     478 So. 2d 368 (Fla 2nd DCA
1985)......................................................................................3

In re Shafer
     63 B.R. 194, Bankr. L. Rep. (CCH) P 71215, 86-2 U.S. Tax Case. (CCH) P
9523 (Bankr. D. Kan. 1986) ...........................................................31

Gompers
     221 U.S. at 442, 31 S. Ct. at 498 (quoting In re Nevitt, 117 F. 448, 451
(C.C.A. 8th Cir.. 1902)) .................................................................31

In re 1990's Caterers Ltd.
     531 B.R. 309, 319 (Bankr. E.D. N.Y. 2015) (Quoting International Union,
United Mine Workers of America V. Bagwell, 512 U.S. 821, 828–29, 114 S. Ct.
2552, 129 L. Ed. 2d 642, 146 L.R.R.M. (BNA) 2641, 128 Lab. Cas. (CCH) P
11120 (1994). ...........................................................................33

**Page No.**

## **STATUTES**

11 U.S.C. §362……………………………………………………………1, 4, 6

11 U.S.C. §507……………………………………………...…………………..33

11 U.S.C. §541(b)…………………………………………….…………...22, 27

28 U.S.C. §157…………………………………………………………………1

28 U.S.C. §158(a)……………………………………………………………….1

28 U.S.C. §158(b)…………………………………………………………… 1

28 USCS §1334…………………………………………………...…1

CCC Section 2924……………………………………………………………...5, 23

CCP 664.6………………...………………………………………6, 14, 28, 29

## **RULES**

## **CONSTITUTIONAL PROVISIONS**

## **MISCELLANEOUS**

§ 2:27. Limitations on the jurisdiction of the bankruptcy courts—The probate exception, 1 Bankruptcy Law Manual § 2:27 (5th ed.)……………..……….4

## STATEMENT OF APPELLATE JURISDICTION

This case is an appeal from the Bankruptcy Court's Order Adjudicating Debtor, Clifford Allen Brace, Jr. in Civil Contempt for Willful Violation of the Automatic Stay by Conducting Unlawful Foreclosure Sale of Estate Property (the "May 5 Contempt Order") issued on May 5, 2020.  E.R. X.  The district court has jurisdiction to review decisions of a bankruptcy court under 28 U.S.C. §158(a). As to the Debtor this is a core proceeding arising under 28 U.S.C.§§1334 and 157. However this is also a non-core proceeding as to the issues adjudicated by the court which affects the rights and interest of other parties who were not joined to this Bankruptcy and not legally served and joined to this motion as the court had no authority to enter a final judgement over those issues and parties, which were never addressed by the court with a findings of fact and conclusions of law.  For example:  the court's order setting aside the Trustee's sale conducted on the deed of trust held by the Estate of Geraldine E. Johnson, when the Estate was never a party to this Bankruptcy.

## STANDARD OF REVIEW

The Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard and the Bankruptcy Court's legal conclusions are reviewed de novo.  *In re New England Fish Co.*, 749 F. 2nd 1277 (9th Cir. Wash. 1984).

Accordingly, the Appellate Court "must determine under a de novo standard whether there is no genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law. [*M/V American Queen v. San Diego Marine Const.*, 708 F.2d 1483, 1487 (9th Cir. 1983)]; *Heininger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir. 1980)." *In re New England Fish Co.* at 1280.

Here, the Bankruptcy Court made a legal conclusion that the Debtor was adjudicated to be in civil contempt of the automatic stay in the Brace Bankruptcy case No. 6:11-bk-26154-SY (the "Brace Bankruptcy"), under 11 U.S.C. § 362(a), regarding the Court's Order Granting Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property ("Compromise Order"), which was entered on October 5, 2017 as Docket No. 123, and the court's Order Granting Emergency Motion for Turnover of Real Property Located at 16270 Chippewa Road, Apple Valley, CA 92307 [APN: 0441-057-03] ("Turnover Order"), which was entered on January 22, 2019 as Docket No. 170, for his alleged actions in conducting a foreclosure sale ("Foreclosure Sale") of the estate's real property commonly known as 16270 Chippewa Road, Apple Valley, CA 92307 [APN: 0441-057-03] ("Property") and allegedly coming into possession of and failing to return the Trustee the $229,000 in proceeds of the Foreclosure Sale even though the GEJ Estate, through a Trustee,

foreclosed on the Chippewa Property and the proceeds of the Foreclosure sale went to the trustee only and were never given to the debtor Brace.

Further, Appellant argues that since the Bankruptcy Court had no jurisdiction over the Johnson Estate as to, "mortgagee in possession" and the mortgagee's right to collect rents, the Bankruptcy Court had no jurisdiction to ever enter into the Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property ("Motion to Approve Compromise") filed as docket 110. The "Defense of lack of jurisdiction over the subject matter may be raised at any time, even on appeal." *Hill Top Developers v. Holiday Pines Service Corp.* 478 So. 2d. 368 (Fla 2nd DCA 1985). "Once challenged, jurisdiction cannot be assumed, it must be proved to exist." *Stuck v. Medical Examiners* 94 Ca 2d 751. 211 P2d 38. Accordingly, this Court must determine under a de novo standard whether the Appellee was entitled to Judgment as a matter of law to support the decision of the Bankruptcy Court and its finding that the Chippewa Property is an asset of the bankruptcy estate and that the Bankruptcy Court had jurisdiction to issue the May 5 Contempt Order.

Additionally, this Court must determine under a de novo standard whether the Appellee was entitled to Judgment as a matter of law to support the Bankruptcy Court's decision that "all actions taken in furtherance of the Foreclosure Sale are void ab initio because they violated the automatic stay, including the notice of

default recorded on September 23, 2019 as Document No. 2019-0339814, the Substitution of Trustee recorded on January 9, 2020, as Document No. 2020-0009393, the Notice of Trustee's Sale recorded on January 9, 2020 as Document No. 2020-0009394, the Foreclosure Sale conducted on February 12, 2020, and the Trustee's Deed Upon Sale recorded on February 28, 2020 as Document No. 2020-0071571" even though the Bankruptcy Court has no jurisdiction over the GEJ Estate. The Estate  has never been brought into the bankruptcy estate as a party. The Chippewa Property was foreclosed upon by a Trustee  and the proceeds of the Foreclosure sale went to the foreclosure Trustee *only* and were never given to the debtor Brace.

### STATEMENT OF ISSUES

1.    Whether the Bankruptcy Court erred in determining that Debtor, Clifford Allen Brace, Jr. Is adjudicated to be in civil contempt of the automatic stay in this bankruptcy case arising under 11 U.S.C. §362(a), and the court's Order Granting Emergency Motion for Turnover of Real Property Located at 16270 Chippewa Road, Apple Valley, CA 92307 (the "Property") [APN: 0441-057-03] ("Turnover Order"), which was entered on January 22, 2019 as Docket No. 170, even though the Debtor has appealed the Turnover Order and that appeal remains pending before the United States Court of Appeals in Case Number 9th Circuit Court of Appeal, Brace v. Speier, C.A., No. 19-56463 (the "Turnover Appeal") and

the relief sought in the Trustee's application for issuance of the OSC filed on March 23, 2020 as Docket No. 209 (the "Application"), was an impermissible collateral attack on Mr. Brace's Turnover Appeal as it attempts to re-litigate issues that have not yet been finally decided and remain the subject of an appeal of the Turnover Appeal.

2.      Whether the Bankruptcy Court erred in determining that the court had jurisdiction over issues and property which is held by the GEJ Probate Estate a party who has never been joined to this Bankruptcy, despite the Probate Exception, and therefore, whether the Court erred in determining that the Property was property of the Debtor's bankruptcy estate despite these issues still being litigated and unresolved as part of the Turnover Appeal.

3.      Whether the Bankruptcy Court erred in finding that Debtor is required to turn over the proceeds of the Foreclosure Sale conducted on February 12, 2020 of the Property in the amount of $229,000.00 in order to purge his contempt even though no proof was provided to the court that the Debtor had ever had these funds in his possession and the Trustee never presented any evidence that the Debtor, in his personal capacity, conducted any foreclosure sale or presented any evidence that the purported foreclosure sale was unlawful in any way under section 2924 of the California Civil Code.

4.      Whether the Bankruptcy Court erred in finding that Debtor is required to turn over the proceeds of the Foreclosure Sale conducted on February 12, 2020 of the Property in the amount of $229,000.00 in order to purge his contempt even though purging his contempt would be impossible based on the language in the OSC since Mr. Brace personally has not received any sale proceeds of the Property.

5.      Whether the Bankruptcy Court erred in finding Mr. Brace in Contempt even though Debtor had an objectively reasonable basis to believe that any of his purported personal actions in carrying out his fiduciary duties as executor of the GEJ Estate and as an officer of Title-Realty did not violate the automatic stay and would otherwise exempt him for any in personam liability and raise a fair ground of doubt under Taggart v. Lorenzen, 139 S.Ct. 1795, 1801-02 (2019).

6.      Whether the Bankruptcy court erred in finding Mr. Brace in Contempt even though  it was objectively reasonable for the Debtor to believe that the Bankruptcy Court lacked jurisdiction to determine a violation of stay regarding the Property because the Plaintiff's Dismissal of the California Superior Case of Estate of Erin Elizabeth Wilson, Etc. v. Clifford Brace, et al., Case No. VCVVS044885 (the "State Court Case") reserved jurisdiction to enforce the related settlement agreement (TERM SHEET) under CCP 664.6.

7.     Whether the Bankruptcy Court erred in imposing monetary sanctions of $229,000.00 against Mr. Brace even through no hearing was ever held to determine the fair market value of the Property

8.     Whether the Bankruptcy court erred in finding Mr. Brace in Contempt and in violation of the automatic stay since Mr. Brace maintained an objectively reasonable belief that the All Construction Services Bankruptcy Case (Case 6:14-bk-17348-SC), was dismissed and the assets were abandoned by Trustee Simons; and therefore, no automatic Stay to the Property ever existed upon the closing of the case pursuant 11 U.S.C. 362(2)(b).

9.     Whether the Bankruptcy Court erred in determining that title to the Property is vested in Steven Speier, Chapter 7 Trustee.

10.    Whether the Court erred, in indicating in the Order Adjudicating Debtor, Clifford Allen, Brace, Jr. In Civil Contempt for Willful Violation of the Automatic Stay (the "Contempt Order") that should Debtor not fully purge his contempt or establish sufficient cause, the court shall consider the imposition of additional sanctions against the Debtor to coerce his compliance with this order including, but not limited to, monetary sanctions or an order of bodily detention even though those terms are not definite, certain and specific in its terms  and sufficiently specific to give Mr. Brace  a fair guide as to what is expected of him?

1. **STATEMENT OF CASE**

Clifford E. Brace, Jr., Appellant herein, appeals the Bankruptcy Court's Order: Order Adjudicating Debtor, Clifford Allen Brace, Jr. in Civil Contempt for Willful Violation of the Automatic Stay by Conducting Unlawful Foreclosure Sales of Estate Property (the "May 5 Contempt Order"). E.R. X. and doc 222.

2. **STATEMENT OF FACTS**

A.    **All Construction Services, Inc. BK 6:14-bk-17348-SC**

On June 3, 2014 All Construction Services, Inc. ("ACS") filed a Chapter 7 bankruptcy case No. 6:14-bk-17348-SC ("ACS Bankruptcy") and at this time held no assets.  See App. A. for a true and correct copy of the Docket. On October 8, 2014 the estate of Elizabeth Erin Wilson filed a Motion for Relief From Stay to proceed against All Construction Services, Inc. in state court case no. VCVVS044885, *Estate of Wilson v. Clifford Brace, ACS, et al.* (the "State Court Case"), in which the Chippewa Property and the deed of trust to Title Realty Services, Inc. ("Title-Realty") was at issue as to quiet title.  See E.R. A and ACS Bankruptcy Doc No. 18.  On December 16, 2014, the Court granted the Motion for Relief From Stay for the Wilson Estate to proceed in action in non-bankruptcy forum in the Wilson State Case.  See E.R. A and ACS Bankruptcy Doc No. 27.  On January 7, 2015, ACS amended its schedule A to include the real property it had just acquired at the Chippewa Property.  See E.R. A and ACS Bankruptcy Doc No.

29.  On January 12, 2015 the Bankruptcy Case was closed.  See E.R. A and ACS Bankruptcy Doc No. 30.

On September 15, 2015, ACS filed a motion to reopen the Case so the Trustee could make a determination if the asset had value to the BK estate.   See App. A and ACS Bankruptcy Doc No. 31.  On October 7, 2015 the case was reopened.  See E.R. A and ACS Bankruptcy Doc No. 33.  On July 28, 2017 creditor Title-Realty filed a motion for relief from stay re: the Chippewa Property. See App. A and ACS Bankruptcy Doc No. 39.  On November 7, 2017 motion was denied without prejudice.  See E.R. A and ACS Bankruptcy Doc No. 48. On November 9, 2017, a Motion to Approve a Compromise under Rule 9019 between Larry D. Simons (the "Motion to Approve Compromise"), the ACS Bankruptcy Trustee and the Trustee of the Brace Bankruptcy Case was filed in the ACS Bankruptcy, which was based upon a purported agreement that was reached in the Wilson State Case (TERM SHEET) allegedly at a mediation on August 15, 2015, in which the California Superior Court reserved the rights to enforce the agreement.  See E.R. B and ACS Bankruptcy Doc No. 50.  See E.R. C. for the original TERM SHEET.  On December 27, 2017, the Court granted the Motion to Approve Compromise.  See E.R. A and ACS Bankruptcy Doc No. 57. On May 17, 2018 the case was closed, no order was issued regarding the Chippewa Property, upon closing.  See E.R. A and ACS Bankruptcy Doc No. 59. On May 18, 2018, the

case was reopened.  ACS Bankruptcy Doc No. 60.  On May 6, 2019, a Motion was filed by Trustee Simons to leave an asset unadministered, the asset was the sum of $25,000.  See E.R. A and ACS Bankruptcy Doc No. 64.  On July 10, 2019 the motion was granted to close the ACS Bankruptcy case with Unadministered Asset. See ACS Bankruptcy Doc No. 69.  On August 15, 2019 the ACS Bankruptcy Case was again closed, *no reservation of rights was reserved to administer or enforce any action regarding the Chippewa Property.*  See *id.*

**B.      Brace Bankruptcy 6:11-bk-26154-SY**

On September 8, 2017, the Chapter 7 Trustee filed its Motion to Approve Compromise Under Rule 9019, based upon the TERM SHEET, Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property. ("Motion to Approve Compromise").  See Brace Bankruptcy Doc No. 110 and E.R. D.  A copy of the original agreement, TERM SHEET, of August 18, 2015 (Exhibit 1 pages 36 & 37) and a copy of a re-drawn agreement (exhibit 1, pages 28 through 37) are included as E.R. E.  On October 5, 2017 the Court issued its "Order Granting Trustee's Omnibus Motion to Approve Compromise under Rule 9019 and (2) Stipulation re: Disposition of Real Property." (the "Omnibus Order").   See E.R. F. and Doc 132.

Page 2 of the Omnibus Order States that: 2. "The settlement agreement between the Trustee and Susanne Christensen, The Estate of Erin Elizabeth

Wilson, and Sonjia Gonzales ("Compromise") is approved.  Exhibit A is a true and correct copy of Compromise which has been filed concurrently herewith as Docket No. 122 and is incorporated by this reference;  3.  The stipulation ("Stipulation") entered into by the Trustee and Larry D. Simons, the duly appointed chapter 7 Trustee ("ACS  Trustee")  in  the  All  Construction  Services,  Inc.  ("ACS") Bankruptcy Case ("ACS Estate") is approved ... 4. "The Trustee is authorized to undertake the steps necessary or expedite to consummate or effectuate the Compromise and Stipulation." This is a *permissive Order* stating that if all parties are in agreement then the Trustee could do whatever was necessary to facilitate it, this order was again based upon the purported state court settlement agreement, TERM SHEET, in which the State Court Case reserved the right to enforce, also the purported agreement of all the parties which did not and does exist, the basis of all of the Courts purported orders and actions arises from the purported TERM SHEET attached as E.R. C and its magically rewritten counterpart attached as E.R. "E".  *No defendants in the Wilson State Case were ever invited to attended the clandestine meeting from which this purported agreement arose nor has any defendant ever agreed to anything in this agreement.*  Furthermore, the Wilson State Court has reserved all jurisdiction over it and its enforcement

### C.     Estate of Geraldine Elizabeth Johnson

On April 5, 2015 A probate for the Estate of Geraldine Elizabeth Johnson (the "Johnson Estate") was created in Superior Court of the State of Arizona, Maricopa County on in case number P2017-001532. Clifford A Brace was the Personal Representative appointed for the Estate in 2004 pursuant to her will. Originally Geraldine Elizabeth Johnson (G.E. Johnson) was joined in the adversary proceeding with appellant Brace.  However, prior to trial she was dismissed "with prejudice".  See Appendix C for a true and correct copy of the Dismissal of G.E. Johnson. 2019. See. App.P.  The listed assets of the Estate of Geraldine Elizabeth Johnson (secured creditor) consist of the Deed of Trust listed as instrument no. 2007-0012152, recorded January 5, 2007, which was assigned to the Estate of Geraldine Elizabeth Johnson, by it's holding company, on October 6, 2017, as instrument 2017-0414610.  This deed of trust encumbered the subject property at 16270 Chippewa Road, Apple Valley, CA 92307, at the time of the foreclosure.

### Motion History to Approve and Enforce Compromise

On September 8, 2017, the Trustee filed its Motion to Approve Compromise.  See App. D and Doc 110. Based upon the TERM SHEET.

On December 6, 2017, the superior Court in the State Court Case issued dismissal of the State Court Case pursuant to a settlement agreement (TERM

SHEET), which Reserved jurisdiction to enforce under CCP 664.6.   See Declaration of Clifford Allen Brace, Exhibit "A" attached to doc 216 and E.R. W.

On January 22, 2019, the Bankruptcy Court issued the Order Granting Emergency Motion for Turnover of Real Property Located at 16270 Chippewa Road, Apple Valley, CA 92307 (the "Apple Valley Property" [APN: 0441-057-03] (the "Turnover Order") issued on January 22, 2019.   See. E.R. P. Based upon the Omnibus Motion/TERM SHEET.

On February 5, 2019, Appellant filed his Statement Responding to Order Granting Emergency Motion for Turnover Doc. #170 and Accounting.   See E.R. Q.

On February 6, 2019, Appellant filed his Notice of Appeal and Statement of Election [Doc #179] initiating the D.C. Case No. 5:19-cv-00290-JGB (the "D.C. Case").   See E.R. A7 and Doc 179.

On May 28, 2019, Appellant filed his Opening Brief in the D.C. Case.   On June 26, 2019, Appellee filed his Opening Brief in the D.C. Case.   E.R. A8.   On November 22, 2019, the D.C. Court issued its order Affirming the Turnover Order (the "D.C. Order").   E.R.  A8.   On December 12, 2019, Appellant timely filed his Notice of Appeal of the D.C. Order to the 9th Circuit Court of Appeal initiating the Turnover Appeal *Clifford Brace, Jr. V. Steven Speier* Case No. 19-56463 that remains pending in the 9th Circuit Court of Appeals.   See E.R. A9.

13

On March 5, 2020, The Trustee filed his Trustee's Motion to Determine Amount of Disputed Claim.  See doc 202 and E.R. R.

On March 13, 2020, Title Realty Services, Inc., ("Title-Realty") filed its "Title-Realty Services, Inc.'s Opposition to Trustee's Motion to Determine Amount of Disputed Claim.  See doc 205 and E.R. S.

### E.     Motion for Contempt and May 5 Contempt Order

On March 23, 2020, the Chapter 7 Trustee, Steven M. Speier (the "Trustee"), filed his "Notice and Application for Issuance of an Order to Show Cause re: Civil Contempt for Willful Violation of the Automatic Stay by Alleged Creditor Conducting Unlawful Foreclosure sale of Estate Property" (the "Motion for Contempt").  See doc 209 and E.R. T.

On March 27, 2020, Debtor filed his Objection to the Motion for Contempt which was entered on the docket on March 30, 2020.  See doc 210 and E.R. U.

On April 1, 2020, the Court issued its Order Granting Motion for Order to Show Cause re: Civil Contempt Order for Willful Violation of the Automatic Stay by Alleged Creditor Conducting Unlawful Foreclosure Sale of Estate Property (the "OSC").  See Doc 212 and E.R. V.

On April 15, the Debtor filed his Response to the OSC which was entered on the docket on April 17, 2020.  See Doc 216. And E.R. W.

On May 5, 2020, the Court issued its Order of Contempt which stated that "Debtor shall file a written response on or before June 4, 2020, supported by admissible evidence, to establish any alleged cause as to why he should not be held in further contempt at a continued hearing to be held on June 18, 2020 at 9:30 a.m." See the Order contempt at doc 222 page 3 ¶5 and E.R. X.

On May 8, 2020, Debtor filed his Notice of Appeal and Statement of Election to Bankruptcy Appellate Panel regarding the Order of Contempt which initiated this appeal. See doc 227 and App. Y.

On May 11, 2020, the Trustee filed his Statement of Election to Proceed in U.S. District Court. See Doc 230 and E.R. Z.

On May 18, 2020, the District Court issued its Notice Regarding Appeal from Bankruptcy Court as to Debtor's pending appeal of the Order of Contempt, entitled Clifford Allen Brace, Jr. v. Steven M Speier, and assigned case number 5:20-cv-01048 PA which remains pending. See doc 234 and E.R. A1 (the "District Court Case").

On May 21, 2020, the Trustee filed its Judith E. Marshack re: attorney's fees ($26,000.00) and costs incurred by Trustee and the Estate related to Contempt Motion and Order to Show Cause Hearing ("Trustee Fee Declaration"). See Doc No. 235 and E.R. A2.

On June 3, 2020, Debtor filed his Further Response to Order Adjudicating Debtor, Clifford Allen Brace, Jr. In Civil Contempt for Willful Violation of the Automatic Stay by Alleged Creditor Conducting Unlawful Foreclosure Sale of Estate Property [Doc 222]. See Doc No. 239 and E.R. A3. In that response, Debtor stated that "Debtor asserts that this Court should issue an order of stay pending appeal of any further contempt, as it relates to the Motion for Contempt, the OSC, or the Order of Contempt as the primary issue as to whether or not Debtor should have been found in contempt by this Court is pending and will be adjudicated in the District Court case which remains pending." See E.R. A3. pages 2-3.

On June 8, 2020, Debtor filed his "Objection to the Trustee fee Declaration." See doc 245 and E.R. A4.

On July 22, 2020, the Court issued the Bodily Detention Order. See Doc 259 and E.R. A5.

On July 29, 2020, Debtor filed his Notice of Appeal and Statement of Election of Bodily Detention Order. See Doc 263 and E.R. A6.

The Bodily Detention Order, states, that, Pursuant to the court's civil contempt powers, a writ of bodily detention and warrant for civil arrest is issued and the United States Marshals Service is authorized and directed to arrest and incarcerate Clifford Allen Brace, Jr. until he appears at a rescheduled hearing on

the OSC at a date and time selected by the court, or is discharged according to the law. See Doc 259 at page 3 ¶3. This order in and of itself is vague and uncertain as to the territorial jurisdiction for the service of process of a writ under Federal Code of Civil Procedure Rule 4.1.b.

### 3. **SUMMARY OF THE ARGUMENT**

Appellant will be irreparably harmed if the court does not vacate the May 5 Contempt Order because he is a 74-year-old man in poor physical health. He served this country admirably as Sergeant in the Air Force during the Viet Nam War. Despite his dedication and service to this country, Mr. Brace, by way of the May 5 Contempt Order, has been found by the Bankruptcy Court to be in Civil Contempt and faces the possibility of being incarcerated against his will for actions taken by a third party, the Johnson Estate, who, by way of foreclosure trustee, foreclosed on the Chippewa Property which was lawful based on the Johnson Estate's rights under its deed of trust as mortgagee in possession whereby the Bankruptcy Court lacks jurisdiction. His health would likely rapidly deteriorate if incarcerated due to his present physical condition. It would also eliminate his ability to carry out his fiduciary duties as executor of the Johnson Estate if he is incarcerated and prosecute his pending appeals.

The May 5 Contempt Order states that Debtor is in contempt for his actions in conducting foreclosure sale (the "Foreclosure Sale") of the estate's real property

commonly known as the [Chippewa Property] and coming into possess of and failing to return the Trustee the $229,000.00 in proceeds of the Foreclosure Sale." See E.R. X 2-3. However, the Deed of Trust was originally held by a non-debtor Title Realty Services, Inc. that was transferred to the Estate of Geraldine E. Johnson ("GEJ Estate"). The GEJ Estate, through a Trustee, foreclosed on the Chippewa Property. The proceeds of the sale went to the trustee only and were never given to the debtor Brace and therefore there is no basis to find Mr. Brace, the individual, in contempt for anything related to the foreclosure of the Chippewa Property.

Further, the May 5 Contempt Order sates that "Within seven days after entry of this order, Debtor shall purge his contempt by turning over the sum of $229,000 to the Trustee payable to "Steven M. Speier, Trustee" and that "Should Debtor not fully purge his contempt or establish sufficient cause, the court shall consider the imposition of additional sanctions against Debtor to coerce his compliance with this order including, but not limited to, monetary sanctions or an order of bodily detention.  Finally, the Order states that "All actions taken in furtherance of the Foreclosure Sale are void ab initio because they violated the automatic stay".  See *id.* at pages 2-3.

Here, the Court should reserve and vacate the May 5 Contempt Order for numerous reasons.  First, the May 5 Contempt Order should be reversed since the

Trustee has made unsupported allegations concerning the Debtor and ignores completely, the fact that title-realty and the GEJ Estate are separate legal entitles from the Debtor and the Debtor himself has not conducted any foreclosure sale of the Chippewa Property and has not received any Foreclosure sale Proceeds. Second, the May 5 Contempt Order should be reversed since the Bankruptcy Court relied on the Application for Issuance of an Order to Show Cause Re: Civil Contempt for Willful Violation of the Automatic Stay by Alleged Creditor conducting Unlawful Foreclosure Sale of Estate Property (the "Application") which was issued in error since the Bankruptcy Court's Order Granting Emergency Motion for Turnover of Real Property Located at 16270 Chippewa Road, Apple Valley, CA 92307 (the "Chippewa Property") [APN: 0441-057-03] (the "Turnover Order") issued on January 22, 2019 as docket number 170 (see App. P) , and the subsequent District Court Order Affirming the Turnover Order, is currently pending appeal with United States Court of Appeal for the 9th Circuit, in the case of Clifford Allen Brace Jr. v. Steven M. Speier, C.A. No. 19-56463  ("Turnover Appeal"). Third, the May 5 Contempt Order should be reversed since the Debtor had and maintains an objectively reasonable basis to believe that his personal actions in carrying out his fiduciary duties as executor of the GEJ  Estate and as an officer of Title-Realty did not violate the automatic stay and would otherwise exempt him from any in personam liability, especially in light of the fact that

Debtor has currently appealed the Turnover Order which remains pending based, inter alia, on his objectively reasonable good faith belief that this Court had no jurisdiction over the GEJ Estate pursuant to *In re Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). Debtor's objectively reasonably good faith belief that there was no stay violation also stems from the fact that any and all purported acts of the Debtor related to the Trustee's allegations are privileged pursuant to 11 U.S.C. § 541(b)(1). Fourth, the May 5 Contempt Order should be reversed, because it was objectively reasonable for the Debtor to believe that the Court also lacked jurisdiction to determine a violation of stay regarding the Chippewa Property because the Plaintiff's dismissal of the state court case of *Estate of Erin Elizabeth Wilson, Et al. v. Clifford Brace, et al.*, Case No. VCVVS044885 (the "State Court Case") indicated that "Pursuant to Settlement of August 15, 2015, jurisdiction to enforce reserved Under CCP 664.6.". See Declaration of Clifford Allen Brace, Exhibit "A" of Debtor's Objection to the Motion for Contempt filed as Doc 216 and App. W. The purported settlement agreements were included as exhibits with this Court in the Motion to Approve Compromise Under Rule 9019 Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property ("Motion to Approve Compromise") (Doc 110). See Doc 110 page 26-38 and App. D. Therefore, the State Court has exclusive jurisdiction to resolve the terms of the settlement Agreement in the State

Court case which include the enforcement and prosecution of issues related to the title to and control of the Chippewa Property.  Fifth, May 5 Contempt Order should be reversed, because imposition of monetary sanctions would be impermissible since no hearing has ever been held to determine the fair market value of the Chippewa Property.  Sixth, the May 5 Contempt Order should be reversed because Mr. Brace would be unable to purge the alleged civil contempt if imposed as he cannot turnover sale proceeds that he is not and was never in control of.

a) **THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE THERE WAS NO AUTOMATIC STAY IN FORCE AT THE TIME OF THE PURPORTED FORCLOSUURE**

The court sites 11 U.S.C. 362(a) as grounds for determining a violation of the *automatic stay,* however the code is very clear that only the filing of a bankruptcy under that code creates a stay and nothing else.  Furthermore, in the All Construction Services, Inc. BK 6:14-bk-17348-SC, this case was closed on August 15, 2019.  Under U.S.C. 362 (c)(2)(A) "(2) the stay of any act under subsection (a) of this section continues until the earliest of----- (A) the time the case is closed."  Subsection (a) (3) states "any act to obtain possession of property of the estate or of property from the estate or to *exercise control* over property of the estate, (4) any act to create, perfect, or *enforce any lien* against property of the estate."  This

clearly means that at the time of all the purported acts by any party there was no automatic stay in effect.

### b.) THE BANKRUPTCY COURT ERRED IN USING A PERMISSIVE ORDER "OMNIBUS MOTION" and "MOTION FOR TURNOVER OF REAL PROPERTY" AS GROUNDS FOR CONTEMPT

The courts order on the  Omnibus Motion was a permissive order and as such it is not possible to violate a permissive order since the Debtor Brace was under no obligation to agree to or act in accordance with said order, since he had never been a part of  nor agreed to it in any way shape or form.  Furthermore, when the turn over order was issued on January 22, 2019 the court no longer had jurisdiction over the subject matter property since the original BK case was closed and the Trustee Simons abandoned the Chippewa Property.   Under U.S.C. 362 (c)(2)(A) "(2) the stay of any act under subsection (a) of this section continues until the earliest of----- (A) the time the case is closed."   Subsection (a) (3) states "any act to obtain possession of property of the estate or of property from the estate or to *exercise control* over property of the estate, (4) any act to create, perfect, or *enforce any lien* against property of the estate."  This clearly means that at the time

of all the purported acts by any party there was no automatic stay in effect. Any purported acts of the Brace or anyone were not subject to an automatic stay.

**c) THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE THE TRUSTEE HAS MADE UNSUPPORTED ALLEGATIONS IN THE MOTION FOR CONTEMPT CONCERNING THE DEBTOR AND IGNORES, COMPLETELY, THE FACT THAT TITLE-REALTY AND THE PROBATE ESTATE ARE SEPARATE LEGAL ENTIIES FROM MR. BRACE**

As a preliminary matter, Mr. Brace states a blanket objection to any claim made by the Trustee in the Application and in the Motion for Contempt that TRS is a Debtor's related entity and the use of the Debtor, Mr. Brace throughout the Motion for Contempt refer to TRS and Mr. Brace as the same entity. TRS is a separate legal entity and under the law must be treated as such. Further, Mr. Brace also states a blanket objection to any claim made by the Trustee in the Motion for Contempt that the Johnson Estate and Mr. Brace are the same entity. The GEJ Estate, through a Trustee, Mohd H. Habeeburrehman, foreclosed on the Chippewa Property. The proceeds of the sale went to the trustee only and were never given to the debtor Brace and therefore there is no basis to find Mr. Brace, the individual, in contempt for anything related to the foreclosure of the Chippewa Property.

**D) THE BANKRUPTCY COURT ERRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE THE UNDERLYING TURNOVER ORDER REMAINS THE SUBJECT OF THE TURNOVER APPEAL AND THE TRUSTEE'S ATTEMPTS TO ENFORCE THAT ORDER IS AN IMPERMISSBLE COLLATERAL ATTACK ON MR. BRACE'S TURNOVER APPEAL**

The relief sought by the Trustee in its Motion for Contempt were an attempt to enforce the Turnover Order which remains the subject of an appeal which is an impermissible collateral attack on Mr. Brace's Turnover Appeal as it attempts to re-litigate issues that have not yet been finally decided. Specifically, in that Appeal, Mr. Brace has argued that he never received proper Notice of the Emergency Turnover Motion and that The Bankruptcy Court violated the Bankruptcy Exception in probate when it issued the Turnover Order, since the Court has no "in rem jurisdiction" over the administration or the assets of the probate which reside exclusively with the Superior Court in Arizona where the probate estate of Geraldine Johnson (the "GEJ Estate"). Accordingly, since the Turnover Appeal remains on appeal, and the 9th Circuit may reverse the Bankruptcy Court, the Motion for Contempt should have been denied, the May 5 Contempt Order should have never been issued, and this Court should reverse the May 5 Contempt Order.

**E) THE BANKRUPTCY ERRRED IN ISSUING THE MAY 5 CONTEMPT ORDER BECAUSE DEBTOR'S OBJECTIVELY REASONABLE BASIS TO BELIEVE THAT HIS PERSONAL ACTIONS IN CARRYING OUT HIS FIDUCIARY DUTIES AS EXECUTOR OF THE GEJ ESTATE AND AS AN OFFICER OF TITLE-REALTY DID NOT VIOLATE THE AUTOMATIC STAY AND WOULD OTHERWISE EXEMPT HIM FOR ANY IN**

**PERSONAM LIABILITY AND RAISE A FAIR GROUND OF
DEBOUT AND THEREFORE THE BANKRUPTCY COURT
SHOULD NEVER HAVE FOUND DEBTOR IN CONTEMPT**

[C]ivil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019) (citing *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885) (internal quotations, brackets, and italics omitted). Debtor had and maintains an objectively reasonable basis to believe that his personal actions in carrying out his fiduciary duties as executor of the GEJ Estate and as an officer of Title-Realty did not violate the automatic stay and would otherwise exempt him from any in personam liability, especially in light of the fact that Debtor has currently appealed the Turnover Order which remains pending based, inter alia, on his good faith belief that the bankruptcy court had no jurisdiction over the GEJ Estate. Debtor's objectively good faith belief that there was no stay violation also stems from the fact that Debtor asserts his actions, done solely for the benefit of the GEJ estate, are privileged pursuant to 11 U.S.C. § 541(b)(1).

Here, Debtor remains confident that he will prevail on the Turnover appeal. The Trustee has failed to prove that Debtor took any action in his legal capacity as the Debtor in this case that would give rise to the issuance of a contempt order and sanctions pursuant to *Taggart v. Lorenzen*. The only evidence provided by the

Trustee was trustee's exhibit "3," a Substitution of Trustee, executed by Mr. Brace in his legal capacity as the personal representative of the Estate of Geraldine GEJ Estate. See Doc 209 and App. T. This document was lawfully executed under an order of the Superior Court State of Arizona pursuant to that probate Superior Court of the State of Arizona, Maricopa County on in case number P2017-001532.

Any and all purported acts of Mr. Brace, related to the Trustee's allegations, are privileged under 11 U.S.C. § 541(b)(1). Wherein these acts were "any power that the debtor may exercise solely for the benefit of any entity other that the debtor." Any actions taken by Mr. Brace were done in order to carry out his fiduciary duties to protect the interests of the GEJ Estate. Furthermore, those purported acts would relate directly to the administration of probate assets and as such are exempt from federal bankruptcy law and jurisdiction under the Bankruptcy exception in Probate set forth in *Marshall v. Marshall* 547 U.S. 293 (2006). Debtor asserts that it must be objectively reasonable for an individual to believe in good faith that carrying out their fiduciary duties as executor of a probate estate is lawful. Therefore, pursuant to *Taggart*, Debtor has demonstrated an objectively fair ground of doubt that his conduct was not wrongful and the Court should not impose sanctions against Mr. Brace.

The Trustee alleged that the Debtor was "knowingly and willfully violating the automatic stay by attempting to exercise control over property of the

26

bankruptcy estate by conducting an unlawful foreclosure sale." See the Application at page 1-2. at doc 209 and App. T. However, the Trustee has presented no evidence that the Debtor, in his personal capacity, conducted any foreclosure sale or presented any evidence that the purported foreclosure sale was unlawful in any under section 2924 of the California Civil Code. Accordingly, the Court erred when it issued the May 5 Contempt Order for violating the Automatic Stay and that Order should be reversed by this Court.

**f) THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5 CONTEMPT ORDER BECAUSE IT WAS OBJECTIVELY REASONABLE FOR THE DEBTOR TO BELIEVE THAT THE BANKRUPTCY COURT LACKED JURISDICTION TO DETERMINE A VIOLATION OF STAY REGARDING THE CHIPPEAWA PROPERTY BECAUSE THE PLAINTIFF'S DISMISSAL OF THE STATE COURT CASE RESERVED JURISDICTION TO ENFORCE THE RELATED SETTTLEMENT AGREEMENT UNDER CCP 664.6 WITH THE STATE COURT**

On September 8, 2017, the Trustee filed its Motion to Approve Compromise Under Rule 9019 Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property ("Motion to Approve Compromise") (Doc 110). See App. D.

On December 6, 2017, the superior Court in the State Court Case issued dismissal of the State Court Case pursuant to a settlement agreement which Reserved jurisdiction to enforce under CCP 664.6 (the "State Dismissal"). See Declaration of Clifford Allen Brace, Exhibit "A" at Doc 216 and App. W.

The purported settlement agreement referenced in the State Dismissal was included as an exhibit with this Court in the Motion to Approve Compromise Under Rule 9019 Trustee's Omnibus Motion for Order Approving (1) Compromise of Controversies and (2) Stipulation re: Disposition of Real Property ("Motion to Approve Compromise") (Doc 110). See Doc 110 page 26-38 and App. D.

Therefore, since both the purported settlement agreements, and the State Court Dismissal included a reservation of rights pursuant to CCP 664.6, the State Court has exclusive jurisdiction to resolve the terms of the settlement Agreement in the State Court case which include the enforcement and prosecution of issues related to the title to and control of the Chippewa Property. Accordingly, it was objectively reasonable for the Debtor to believe that the Bankruptcy Court also lacked jurisdiction to determine a violation of stay regarding the Chippewa Property based on a reasonable person's reading and interpretation of the State Dismissal and the Bankruptcy Court erred when it issued the May 5, 2020 Contempt Order based on a violation of the Stay as it relates to the Foreclosure Sale of the Chippewa Property because the State Court still has exclusive jurisdiction to resolve the Terms of the Settlement Agreement.

g) **THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5, CONTEMPT ORDER BECAUSE THE MAY 5 2020 CONTEMPT ORDER DOES NOT CLEARLY SPECIFY THE MEANS OF PURGING THE CONTEMPT**

The May 5 Contempt Order issued by the Court does not specify the means of purging the contempt. Specifically, it states that "Within seven days after entry of this order, Debtor shall purge his contempt by turning over the sum of $229,000 to the Trustee payable to "Steven M. Speier, Trustee." That Order goes on to state that "should Debtor not fully purge his contempt or establish sufficient cause, the court shall consider the imposition of additional sanctions against Debtor to coerce his compliance with this order including, but not limited to, monetary sanctions or an order of bodily detention." See the May 5 Contempt Order at E.R. X. at 3 ¶4 and ¶5. and doc 222. The Order leaves the purging of contempt to the court's discretion. It does not outline the specific acts required by Mr. Brace to release him from the incarceration or when his contempt would be fully purged especially in light of the fact that the Debtor cannot turn over proceeds that are not, and never were, in his position. Further, it states that "The provisions of this order are civil and not criminal in nature and are designed only to coerce compliance with this court's orders and judgments including the Compromise Order and Turnover Order in monetary damages as set forth in this order. See id. at page 4 ¶9.

"Sanctions for civil contempt are compensatory or coercive, imposed primarily to induce compliance, giving the contemnor the opportunity to purge himself or herself of the contempt and secure cessation of the punishment. In re Shafer, 63 B.R. 194, Bankr. L. Rep. (CCH) P 71215, 86-2 U.S. Tax Cas. (CCH) P

9523 (Bankr. D. Kan. 1986). The Supreme Court's expression of this principle is that, by compliance with the order, the contemnor "carries the keys of his prison in his own pocket." *Gompers*, 221 U.S. at 442, 31 S.Ct. at 498 (quoting in re Nevitt, 117 F. 448, 451 (C.C.A. 8th Cir. 1902))."

§ 9020:2Civil contempt, Bankr. Proc. Manual § 9020:2 (2018 ed.)

Mr. Brace does not carry the "keys of his prison" where the detention is subject to the discretion of the court. Judge Yun has already stated his belief that Mr. Brace is a liar (see Appendix B). He would not believe any representation made by Mr. Brace resulting in his perpetual incarceration. It would be impossible for Debtor to comply with the Bodily Detention Order has cannot turn over foreclosure sale proceeds from the Chippewa Property which are not in his possession and were never in his possession and therefore this court should reverse and vacate the May 5 Contempt Order.

Debtor had and maintains an objectively reasonable basis to believe that his personal actions in carrying out his fiduciary duties as executor of the Geraldine Johnson Estate ("GEJ Estate") and as an officer of Title-Realty did not violate the automatic stay and would otherwise exempt him from any in personam liability, especially in light of the fact that Debtor has currently appealed the Turnover Order which remains pending based, inter alia, on his objectively reasonable good faith belief that this Court had no jurisdiction over the GEJ Estate pursuant to *In re*

*Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). The Estate is not a party to the Bankruptcy and was actually dismissed with prejudice. It is the Probate Court of Arizona where the Estate of Geraldine Johnson was filed that has jurisdiction over the administration of the Estate assets.

**h) THE BANKRUPTCY COURT ERRED WHEN IT ISSUED THE MAY 5 CONTEMPT ORDER BECAUSE THE DEBTOR WOULD BE UNABLE TO PURGE ANY CONTEMPT ISSUED AS A RESULT OF THE LANGUAGE IN THAT ORDER**

Mr. Brace is an elderly, disabled Viet Nam veteran living on Social Security. It is difficult to determine from the Order filed and entered on May 5, 2020 if payment of the sanctions is part of the contempt. As set forth in the May 5 Contempt, Order, the "Trustee may file and serve evidence of the estate's damages arising from Debtor's contempt, including attorneys' fees and costs, by May 21, 2020." See E.R. X at page 3 ¶ 8. Does Mr. Brace have to pay the contemplated sanctions calculated by the Trustee to avoid incarceration or purge himself of the contempt?

A bankruptcy court may incarcerate the contemnor as a coercive sanction for civil contempt, so long as "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." *In re 1990's Caterers Ltd.*, 531 B.R. 309, 319 (Bankr. E.D. N.Y. 2015) (quoting *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828–29, 114 S. Ct. 2552, 129 L. Ed. 2d 642, 146 L.R.R.M. (BNA) 2641, 128 Lab. Cas. (CCH) P 11120 (1994)

There is nothing in the May 5 Contempt Order that would establish that Mr. Brace has the financial means to pay the Trustee's attorney's fees and costs or the turnover of the $229,000.00 of foreclosure sale proceeds which are not in his possession.  Thus, no showing that he has the ability to purge the contempt and obtain his release and therefore the May 5, 2020 Contempt order should be reversed.

### i) **THE REVERSAL OF THE MAY 5 CONTEMPT ORDER WILL NOT INJURE OTHER PARTIES**

The reversal of the May 5 Contempt Order will not injure other parties since the GEJ estate is a primary secured creditor against the Chippewa Property and the Johnson Estate's rights cannot simply be disregarded since the right of general unsecured creditors would be secondary in terms of administrative priority under the Bankruptcy Code pursuant to 11 U.S.C. Section 507.

### j) **THE PUBLIC INTEREST WARRANTS A REVERSAL OF THE MAY 5 CONTEMPT ORDER**

The Court should issue a reversal of the May 5 Contempt Order because incarcerating elderly and physically impaired men attempting to perform their fiduciary duties to a probate estate is against the public interest, as is cruel and unusual punishment under the 5th amendment.  Again, Mr. Brace is a 72-year-old man in poor physical health and he served admirably in the United States Air Force during the Vietnam war. Failure to overturn the May 5 Contempt

Order would mean he will be imprisoned indefinitely purging the contempt would be impossible for the reasons set forth above.  If he is incarcerated as a result of the May 5 Contempt Order as a form of coercion, Mr. Brace's health will rapidly deteriorate due to his present physical condition.   It would also eliminate his ability to carry out his fiduciary duties as executor of the Johnson Estate or process his appeals.

## 4.  **CONCLUSION**

For the foregoing reasons, the May 5 Contempt Order should be reversed.

Dated: August 18, 2020                    Clifford Allen Brace, Jr.

By _____
Clifford Allen Brace, Jr.
In Pro Per

## STATEMENT OF RELATED CASES

Clifford Allen Brace, Jr, Debtor Pursuant to Circuit Rule

28-2.6, Petitioner states that the following cases in the Ninth Circuit may raise

closely related issues concerning the prolonged and indefinite detention of

aliens pending completion of removal proceedings:

The undersigned certifies that the following are known related cases and

appeals:

1. 6:11-ap-02053-SY -Steven M. Speier v. Clifford Allen Brace, Jr., et al.

2. Clifford Brace Jr., et al v. Steven Speier, BAP Case No.  CC-16-1041

3. COA No. 17-60032.

4. Superior Court of Ca Case NO. VCVVS044885 (Estate of Erin Elizabeth
   Wilson)

5. Clifford Brace Jr., V. Steven Speier, BAP Case No. 17-1160

6. Superior Court of the State of Arizona, Maricopa County on in case number
   P2017-001532

7. CV2018-052004 Estate of Geraldine Elizabeth Johnson v. Steven M. Speier
   (Superior Court of the State of Arizona)

8. In re: Clifford Brace Jr., v. Steven Speier, BAP Case No. 18-1172

9.  COA No. 19-6004.

10. Steven Speier v. Clifford Allen Brace, Jr. COA No. 19-60008

11. Steven Speier v. Clifford Allen Brace, Jr. COA No. 19-56463

12. Steven Speier v. Clifford Allen Brace, Jr., BAP Case No. CC-20-1190

Dated: August 18, 2020                    Clifford Allen Brace, Jr.

                                          By: _____
                                          Clifford Allen Brace, Jr.
                                          In Pro Per

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 9,016 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using [insert name and version of word processing program] Times New Roman 14-point font.


Dated: August 18, 2020                    Clifford Allen Brace, Jr.

                                          By: _____
                                          Clifford Allen Brace, Jr.
                                          In Pro Per

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, I filed the foregoing with the Clerk of the

Court for the United States District Court for the Central District of California by

U.S. Mail.

Participants in the case who are registered CM/ECF users will be served by

the CM/ECF system.

Dated: August 18, 2020                    Clifford Allen Brace, Jr.

By: _____

Clifford Allen Brace, Jr.
In Pro Per

# SERVED BY U.S. MAIL

<u>VIA U.S. MAIL:</u>
**Appellee**
Steven M. Spier, Chapter 7 Trustee
c/o Marshack Hays LLP
Attn: Richard Marshack
870 Roosevelt, Irvine, CA 92620

Steven M. Speier, Chapter 7 Trustee
P.O. Box 7637
Newport Beach, CA 92658

Party: Mohd H. Habeeburrehman, In Pro Per
Mohd H. Habeeburrehman
6040 E. Main Street, Suite 426
Mesa, AZ 85206

PARTY: CATAMOUNT PROPERTIES 2018, LLC
C/O:WEDGEWOOD
Office of the General Counsel
David M. Poitras, P.C. (SBN 141309)
2015 Manhattan Beach Blvd., #100
Redondo Beach, CA 90278

**VIA PERSONAL DELIVERY**
Courtesy Chambers Copy
Honorable Percy Anderson
First Street Courthouse, 350 W. 1st Street,
Courtroom 9A, 9th Floor,
Los Angeles, California 90012

ORIGIN ID:FSBA (909) 793-7276
CLIFFORD ALLEN BRACE JR.
22421 CHERYL LN
GRAND TERRACE, CA 92313
UNITED STATES

SHIP DATE: 19AUG20
ACTWGT: 5.00 LB
CAD: 6898247/SSFC02110

BILL SENDER

TO OFFICE OF THE CLERK, GEORGE E.
BROWN JR. FEDERAL BLDG & US CTHOUSE
3470 TWELFTH ST

RIVERSIDE CA 92501
(951) 328-4450

REF:
PO#:
DEPT:

THU - 20 AUG 10:30A
PRIORITY OVERNIGHT

TRK# 3959 8712 1131
0201

94 MERA

CK
CA-US
92501
SBD

FedEx
Express



CLERK, U.S. DISTRICT COURT
RECEIVED
AUG 20 2020
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY DEPUTY

PA